IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| HORACE COOK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil No. ___:20-cv-___3115-JWL |
| | ) | |
| CLAUDE MAYE, Warden, USP Leavenworth, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

COMES Petitioner, HORACE COOK ("Cook"), appearing *pro se,* and in support of this memorandum would show as follows:

## I. STATEMENT OF JURISDICTION

Jurisdiction is vested in this Court pursuant to 28 U.S.C. § 2241, which confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2241(a) and (c)(3). A petition for habeas corpus under 28 U.S.C. § 2241 must be filed in the district of confinement. A federal prisoner may also challenge the legality of his detention under § 2241 if he falls within the "savings clause" of § 2255(e). See *Stanko v. Davis*, 617 F.3d 1262 (10th Cir. 2010).

## II. STATEMENT OF THE GROUND FOR REVIEW

Savings Clause Jurisdiction Exists For Prisoners Whose Sentences Were Enhanced By The Mandatory Career Offender Guideline When A Subsequent, Retroactive Change In Statutory Interpretation By The Supreme Court Reveals That The Enhancement Was Unlawful.

## III. <u>STATEMENT OF THE CASE</u>

### A.   <u>Procedural Background</u>

On September 27, 2012, a grand jury sitting in the United States District Court for the Southern District of Florida, Miami Division, returned a four (4) count Indictment charging Cook. See Doc. 1.[1]   Counts 1-4 charged Cook with Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a). *Id.* The Indictment also contained Forfeiture Allegations, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21 U.S.C. § 853. *Id.*

On December 20, 2012, a Change of Plea Hearing was held and Cook entered a plea of guilty as to Count 4 of the Indictment, pursuant to a written Plea Agreement. See Docs. 19, 20.

On February 26, 2013, Cook was sentenced to a term of 151 months' imprisonment, 3 years of Supervised Release, $759.00 Restitution, and a Mandatory Special Assessment Fee of $100. See Docs. 32, 33.

On March 4, 2014, Cook filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). See Doc. 38; CvDoc. 1.

On April 30, 2015, the Court issued an Order denying Cook's "§ 2255 Motion. See CvDoc. 30.

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the Southern District of Florida, Miami Division in Criminal No. 1:12-cr-20716-FAM-1, which is immediately followed by the Docket Entry Number. "CvDoc." refers to the Docket Report in the United States District Court for the Southern District of Florida, Miami Division in Civil No. 1:14-cv-20827-FAM, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

## B.    Statement of the Facts

### 1.    Offense Conduct

The following narration of offense conduct was derived from the PSR:

On August 14, 2012, the defendant, Horace Cook, entered the Laundromat located at 10396 N.W. 7th Avenue, Miami, and approached the front counter where two employees were standing. As the defendant approached, both employees observed the defendant concealing his hands under his shorts. The defendant demanded that Employee #1 open the register and give him money as he made gestures with his concealed hand. Based on the defendant's gestures, both employees thought the defendant had a gun. Employee #2 eventually opened the register and gave the defendant all of the money. The defendant exited the Laundromat with $200 in cash.

On August 15, 2012, the defendant entered the same Laundromat (at the "10396" address), and approached the same two employees in the same manner. Employee #1 recognized the defendant from the previous day and alerted Employee #2. The defendant demanded the money from the cash register, again with his hand concealed in his pants and making threatening gestures while implying he had a firearm. The defendant said, "Hurry up before I kill you!" The defendant exited the business with $200 in cash.

On August 16, 2012, the defendant returned to the same Laundromat (at the "10396" address). On this date, there was a different employee working at the business. The defendant approached the employee with his hand concealed in the same manner and demanded money from the cash register. The employee opened the register and gave the defendant the money from the cash register. The defendant fled from the business with $160 in cash.

On August 17, 2012, the defendant entered the Forever Young Clothing Boutique (FYCB), located at 10645 N.W. 7th Avenue, Miami. The victim advised the defendant was carrying a weapon, but was unable to positively identify the weapon as it was concealed under his shirt. Upon entering the business, the defendant immediately proceeded to the employee behind the register and said, "Give me everything in the register." As the employee attempted to comply with the defendant's demands, the defendant reached under the counter (with his free hand) and removed the employee's designer purse. The victim stated the purse was valued at approximately $3,000 and it contained $759 in cash. The defendant fled from the business. The victim's purse was subsequently recovered; however, the victim sustained a loss of $759. The government's investigation revealed FYCB did not sustain any loss.

3

As the defendant fled from the FYCB to a vehicle, he encountered another victim, a woman who was walking to her vehicle in the parking lot of the strip mall. The defendant grabbed the woman's arm and attempted to steal her purse. The woman struggled; however, the defendant successfully took the purse, entered a vehicle and fled.

Through further investigation, law enforcement officers identified the defendant as a possible suspect in the robberies. During separate interviews, all of the victims positively identified the defendant as the assailant from each of the robberies. The defendant was arrested on October 29, 2012. According to the government, the defendant did not make any post-arrest statements.

See PSR ¶¶ 5-11.

### 2.   Plea Proceeding

December 20, 2012, a Change of Plea Hearing was held before Chief Judge Federico A. Moreno. See Doc. 19. Cook pled guilty as to Count 4 of the Indictment, pursuant to a written Plea Agreement. See Doc. 20. In exchange for Cook's guilty plea, the government agreed to: (1) dismiss Counts 1 through 3 of the Indictment, after sentencing; and (2) recommend a three-level reduction for acceptance of responsibility. *Id.* The case was referred to the Probation Office for the preparation of the PSR.

### 3.   Presentence Report Calculations and Recommendations

On February 26, 2013, the Probation Office prepared Cook's PSR. The November 1, 2012 Guidelines Manual was used in this case. According to the PSR, Cook's Base Offense Level was 20 for an offense involving robbery, pursuant to USSG § 2B3.1(a). See PSR ¶ 15. Two (2) levels were added because a threat of death was made, pursuant to USSG § 2B3.1(b)(2)(F). See PSR ¶ 16. However, Cook was classified as a career offender within the meaning of § 4B1.1 of the guidelines. Therefore, Cook's offense level was increased to 32. Cook received a three (3) level reduction for acceptance of responsibility, pursuant to USSG §§ 3E1.1(a) and (b). See PSR ¶¶ 22-23. The PSR

4

calculated Cook's Total Offense Level to be level 29. See PSR ¶ 24. Cook's criminal history points

totalled to 8, establishing a Criminal History Category of IV. As a career offender, however, his

Criminal History Category is VI, pursuant to USSG § 4B1.1(b). See PSR ¶ 38. Based upon a Total

Offense Level of 29, in Criminal History Category VI, the advisory guideline range of imprisonment

was 151 to 188 months. See PSR ¶ 84.

### 4.    Sentencing Proceeding

On February 26, 2013, a Sentencing Hearing was held before Chief Judge Federico A.

Moreno. See Doc. 32. Cook through his counsel raised objection to the PSR, to wit: Cook's career

offender classification. See Doc. 26. At sentencing, the Court overruled Cook's PSR objection and

sentenced him to a term of 151 months, followed by a 3-year term of supervised release. He was also

ordered to pay restitution in the amount of $759.00, and a $100 Mandatory Special Assessment Fee.

See Doc. 33. No direct appeal was filed in this case.

### 5.    Postconviction Proceeding

On March 4, 2014, Cook filed a § 2255 Motion, asserting that Cook asserts that he is entitled

to relief based on three grounds, specifically that: (1) his lawyer was ineffective because she wrongly

informed him that his State court charges for strong-armed robbery had been dismissed; (2) the

Magistrate Judge mistakenly also informed him that the State court strong-armed robbery charges

were dismissed; and (3) his federal conviction is somehow invalid under double jeopardy grounds

because he was convicted of the same offense in State court. See CvDoc. 1 at 4-5, 7. On July 24,

2014, the government filed a Response to the Court's Show Cause Order [CvDoc. 19], opining that

for a variety of reasons, all of Cook's claims fail. See CvDoc. 23. On April 1, 2015, the Magistrate

Judge P.A. White, issued a Report and Recommendation ("R&R"), recommending that Cook's §

5

2255 Motion be denied; and that a certificate of appealability be denied as well. See CvDoc. 31. On May 30, 2015, the Court adopted the Magistrate Judge's R&R and denying Cook's § 2255 Motion. See Docs. 37, 38.

## IV. **WRITS OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**

A federal prisoner may attack the validity of his conviction in a § 2241 petition if he can meet the requirements of § 2255(e)'s savings clause. See *Hale v. Fox*, 829 F.3d 1162 (10th Cir. 2016); *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013). This Court has jurisdiction to hear a habeas corpus petition under 28 U.S.C. § 2241 because it is the closest U. S. District Court to where Cook is incarcerated.

See *In re Dorsainvil*, 119 F.3d 245, 251 (3d Cir. 1997). In *Dorsainvil*, the Court held that a § 2241 petition could be used by a federal inmate whose underlying conduct is no longer considered criminal as a result of intervening statutory interpretation by the United States Supreme Court. See *Dorsainvil*, 119 F.3d at 251. See also, *Bruce v. Warden Lewisburg USP*, 868 F.3d 170 (3rd Cir. 2017) (explaining that *Dorsainvil* permits access to § 2241 by a federal inmate who presents an actual innocence theory based on a "a change in statutory caselaw that applies retroactively in cases on collateral review," so long as that inmate "had no earlier opportunity to test the legality of his detention since the intervening Supreme Court decision issued").

A petitioner may test the legality of his detention under § 2241 through the § 2255(e) savings clause where the target of the petition is a sentence enhancement, not a conviction, by showing that he is "actually innocent." See *Selsor v. Kaiser*, 22 F.3d 1035 (10th Cir. 1994); *United States v. Shipp*, 589 F.3d. 1084 (10th Cir. 2009). Where a petitioner asserts factual innocence of his crime of conviction due to a change of law, he may show that his remedy under § 2255 is inadequate or

6

ineffective by satisfying four conditions: (1) "the existence of a new interpretation of statutory law,"
(2) "issued after the petitioner had a meaningful time to incorporate the new interpretation into his
direct appeals or subsequent motions," (3) that is retroactive, and (4) applies to the petition's merits
such that it is "more likely than not that no reasonable juror would have convicted" the petitioner.
*Hill,* 836 F.3d at 595.

## V. **DISCUSSION**

As a preliminary matter, Cook respectfully requests that this Court be mindful that *pro se*
litigants are entitled to liberal construction of their pleadings. See *U.S. v. Hernandez*, 627 F.3d 1331
(10th Cir. 2010) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by
attorneys and will, therefore, be liberally construed."); *Estelle v. Gamble,* 429 U.S. 97, 103 (1976);
*Haines v Kerner*, 404 U.S. 519, 520 (1972) (same).

### Savings Clause Jurisdiction Exists For Prisoners Whose Sentences Were Enhanced By The Mandatory Career Offender Guideline When A Subsequent, Retroactive Change In Statutory Interpretation By The Supreme Court Reveals That The Enhancement Was Unlawful.

The Supreme Court has "consider[ed] it uncontroversial . . . that the privilege of habeas
corpus entitles the prisoner to a meaningful opportunity to demonstrate that he is being held pursuant
to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723,
779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). Accordingly, suspension of the writ
of habeas corpus is constitutionally prohibited. U.S. Const. art. I, § 9, cl. 2. The initial codification
of post-conviction remedies in § 2255 was intended not as a limitation on habeas review, but as a
means to improve its administration. See *United States v. Hayman*, 342 U.S. 205, 219 (1952)
("Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights
of collateral attack upon their convictions."). The "savings clause" of § 2255(e) protects against

7

unconstitutional suspension of the Great Writ by allowing federal prisoners to bring a petition for habeas corpus relief under 28 U.S.C. § 2241 when the remedy by § 2255 motion "is inadequate or ineffective to test the legality of his detention."

Precedent caselaw "establishes that new [Supreme Court] decisions interpreting federal statutes that substantively define criminal offenses automatically apply retroactively." See *Schriro v. Summerlin*, 542 U.S. 348, 351-2 (2004) ("New substantive rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms . . . .") (citing *Bousley v. United States*, 523 U.S. 614, 620-21 (1998)). Such interpretative decisions "decid[e] for the entire country how courts should have read the statute since it was enacted." *Kenemore*, 690 F.3d at 641. They apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal . . . ." *Schriro*, 542 U.S. at 352 (quoting *Bousley*, 523 U.S. at 620) (quotation marks omitted).

        1.      Persuasive Sixth And Seventh Circuit Precedent Holds That Savings Clause Jurisdiction Encompasses Innocence Of A Mandatory Career Offender Enhancement That Has Been Rendered Invalid By Intervening, Retroactive Supreme Court Precedent.

Opinions from the Sixth and Seventh Circuits provide a persuasive analytical model for permitting savings clause relief for a narrow category of fundamental career offender errors. In *Brown*, the Seventh Circuit relied on the text of the "savings clause", which allows a § 2241 petition where the § 2255 remedy is "inadequate or ineffective to test the legality of [the prisoner's] detention," 28 U.S.C. § 2255(e) to hold that actual innocence can mean innocence of the sentence. See *Brown,* 719 F.3d at 588. The Seventh Circuit noted that this provision "does not limit its scope to testing the legality of the underlying criminal conviction." *Id.* The court found that the unlawful

8

application of a mandatory career offender enhancement constitutes a miscarriage of justice remediable on collateral review:

> To classify an individual as belonging to a "subgroup of defendants, repeat violent offenders" is to "increase, dramatically, the point of departure of his sentence" and accordingly is "certainly as serious as the most grievous misinformation that has been the basis for granting habeas relief." Thus, the misapplication of the sentencing guidelines, at least where (as here) the defendant was sentenced in the pre-*Booker* era, represents a fundamental defect that constitutes a miscarriage of justice corrigible in a § 2241 proceeding.

*Id.* at 587-88 (quoting *Narvaez v. United States*, 674 F.3d 621, 629 (7ᵗʰ Cir. 2011)).

Likewise, in *Hill*, the Sixth Circuit found jurisdiction under § 2241 to consider retroactive statutory error in imposing a mandatory career offender enhancement. The Sixth Circuit in *Hill* rejected its prior unpublished decisions stating that a misapplied sentence enhancement does not constitute actual innocence for purposes of § 2241. Hill, 836 F.3d at 597. The court found more persuasive the Seventh Circuit's reasoning in *Brown* and Judge Gregory's dissenting opinion in the Fourth Circuit case of *United States v. Surratt*, 797 F.3d 240 (4ᵗʰ Cir. 2015) (Gregory, J., dissenting), reh'g en banc granted (Dec. 2, 2015), appeal dism'd as moot, 855 F.3d 218 (2017). The Court explained that an enhancement under the mandatory career offender guideline is equally as egregious as the imposition of a sentence above the statutory maximum:

> Serving a sentence imposed under mandatory guidelines (subsequently lowered by retroactive Supreme Court precedent) shares similarities with serving a sentence imposed above the statutory maximum. Both sentences are beyond what is called for by law . . . and both raise a fundamental fairness issue. . . . [H]ad the career-offender enhancement been properly considered under now-applicable Supreme Court precedent, Hill would not have been treated as a career offender, and the sentencing court would have been required to impose a sentence within a lesser range.

*Hill*, 836 F.3d at 599. Accordingly, the Sixth Circuit authorized a "narrow subset" of § 2241 petitions on the same grounds described in *Brown* for:

(1) prisoners who were sentenced under the mandatory guidelines regime . . . , (2) who are foreclosed from filing a successive petition under § 2255, and (3) when a subsequent, retroactive change in statutory interpretation by the Supreme Court reveals that a previous conviction is not a predicate offense for a career-offender enhancement.

*Hill*, 836 F.3d at 599-600.

> 2. Permitting Savings Clause Relief For Fundamental Career Offender Errors Promotes A Cohesive Scheme Of Collateral Review For Sentencing Innocence Claims.

Following the well-reasoned holdings in *Brown* and *Hill* would be consistent with existing precedent permitting collateral review of career offender error. By its text, § 2255(e) is applicable to "a prisoner who is authorized to apply for relief by motion pursuant to this section[.]" This filter restricts the availability of the savings clause to sentenced federal prisoners who raise a type of claim that § 2255(a) permits, including innocence of a mandatory career offender enhancement.

Recognizing that under 28 U.S.C. § 2255, not all claims of sentencing error are cognizable, the statute permits federal prisoners to challenge a sentence on the grounds that it was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). However, a non-constitutional and non-jurisdictional "error of law" provides a basis for collateral attack only when "the claimed error constitute[s] 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

It is well established that errors under the mandatory career offender guideline can meet the miscarriage of justice standard. See *Johnson v. United States*, 544 U.S. 295, 303-04 (2005). In *Johnson*, the Supreme Court stated that the erroneous imposition of a mandatory career offender

10

sentence is a miscarriage of justice for purposes of cognizability under § 2255 when one of the necessary predicates is vacated in state court. See *Johnson*, 544 U.S. at 303-04; see also, *United States v. Tucker*, 404 U.S. 443, 447 (1972) (holding that reliance on constitutionally invalid predicate convictions to enhance sentence within the statutory maximum violated due process). An error in imposing a mandatory career offender sentence is also cognizable under § 2255 when intervening Supreme Court precedent establishes that the defendant's prior convictions no longer trigger career offender treatment. See *Narvaez*, 674 F.3d at 623.

By permitting career offender errors that meet the miscarriage of justice standard to be raised under the savings clause through § 2241, the opinions in *Brown* and *Hill* promote a cohesive scheme of collateral review for sentencing errors and avoid unconstitutional suspension of the writ. A contrary conclusion would serve no purpose other than to insulate fundamentally unjust sentences from review based solely on the fact that the Supreme Court decision clarifying the correct application of the law was issued after the defendant's first § 2255 motion became final. The "lone peril" in recognizing an avenue for relief is "the possibility that we might permit the government to deny someone his liberty longer than the law permits only because we refuse to correct an obvious judicial error." *Hicks v. United States*, 137 S. Ct. 2000, 2001 (2017).

Further, there is no reason to treat a mandatory Guidelines sentencing enhancement any differently than a mandatory statutory sentencing enhancement because they have equal impact on the lawfulness of the detention. The law in effect when Cook was sentenced made the Guidelines "mandatory and impose[d] binding requirements on all sentencing judges." *Booker*, 543 U.S. at 259. By virtue of 18 U.S.C. § 3553(b), a mandatory directive requiring that "the court 'shall impose a sentence of the kind, and within the range' established by the Guidelines, subject to departures in

11

specific, limited circumstances," the Guidelines had "the force and effect of laws." *Id.* at 234 (citing *Mistretta v. United States*, 488 U.S. 361, 391 (1989), and *Stinson v. United States*, 508 U.S. 36, 42 (1993)).

A sentencing judge's authority to depart from the Guidelines range does not distinguish mandatory guideline provisions from statutory sentencing provisions, which are also subject to specified exceptions. See, e.g., 18 U.S.C. § 3553(e), (f). Before *Booker*, guideline departures were limited and had to be determined by considering "only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b). Those policy statements and commentary, which prohibited and restricted departures, were themselves "binding." *Stinson*, 508 U.S. at 42-43. Courts were not permitted "to decide for themselves, by reference to the . . . goals of" § 3553(a)(2), "whether a given factor ever [could] be an appropriate sentencing consideration," *Koon v. United States*, 518 U.S. 81, 108 (1996), or to "substitute their policy judgments for those of Congress and the Sentencing Commission," USSG § 5K2.0 cmt. As the Supreme Court stated, "[i]n most cases, as a matter of law, . . . no departure [was] legally permissible [and] the judge [was] bound to impose a sentence within the Guidelines range." *Booker*, 543 U.S. at 234.

Other circuits as well as the Third Circuit recognized that the mandatory Guidelines, no less than statutes, set the minimum and maximum terms authorized. "[T]here is no doubt" that the mandatory guidelines were "law" and that an erroneous career offender designation "results in a sentence substantively not authorized by law." *United States v. Doe*, 810 F.3d 132, 160 (3d Cir. 2015); see also, *In re Hubbard*, 825 F.3d 225, 234-35 (4th Cir. 2016) (rejecting government's argument that mandatory guidelines "do not change the range of legally permissible outcomes").

12

"Before *Booker*, the guidelines were the practical equivalent of a statute. Departures were permitted on specified grounds, but in that respect the guidelines were no different from statutes, which often specify exceptions." *Hawkins v. United States*, 706 F.3d 820, 822 (7th Cir. 2013). A "sentence imposed under mandatory guidelines (subsequently lowered by retroactive Supreme Court precedent)" and a "sentence imposed above the statutory maximum" are both "beyond what is called for by law." *Hill*, 836 F.3d at 599. Because the mandatory Guidelines had "legal force," an erroneous career offender designation under the mandatory guidelines produced a sentence greater than the "maximum authorized by law." *United States v. Foote*, 784 F.3d 931, 942 (4th Cir. 2015). "[T]here is no doubt" that the mandatory guidelines were "law" and that an erroneous career offender designation "results in a sentence substantively not authorized by law."

The fundamental purpose of habeas relief, and the escape hatch in particular, is to allow for review of claims that the defendant is subject to illegal detention. See 28 U.S.C. § 2255(a), (e). Errors in determining the binding statutory sentencing range and errors in determining the binding Guidelines sentencing range both have an equivalent impact on the legality of the petitioner's detention. After all, the *Booker* remedial opinion was effectuated by the invalidation of the statutes that made the Guidelines mandatory.

3.    Intervening Supreme Court Precedent Establishes That Cook's Prior Convictions For Robbery, Is Not A Crime of Violence And Does Not Qualify Him As A Career Offender.

To qualify as a career offender under USSG § 4B1.1, a defendant must be convicted of "a felony that is either a crime of violence or a controlled substance offense" and have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." The Guidelines define "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that ... has as an element the use, attempted use, or

13

threatened use of physical force against the person of another." Guidelines Manual § 4B1.2(a)(1).2 It bears discussing the meaning of "use" and "physical force." *United States v. Chapman*, 866 F.3d 129 (3ʳᵈ Cir. 2017).

The word "use" means "the intentional employment of ... force, generally to obtain some end." *Tran v. Gonzales*, 414 F.3d 464, 470 (3d Cir. 2005). "[T]he word 'use' conveys the idea that the thing used ... has been made the user's instrument. *United States v. Castleman*, 134 S.Ct. 1405, 1415 (2014).

Turning to "physical force," the Supreme Court has defined this phrase to mean "violent force," in other words, "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

To determine whether a conviction qualifies as a crime of violence, courts use the categorical approach, which calls for a comparison of "the elements of the statute forming the basis of the defendant's conviction" with the definition of crime of violence. See *Descamps v. United States*, 133 S.Ct. 2276 2281(2013). See also, *Mathis v. United States*, 136 S. Ct. 2243 (2016). Under this approach, courts "'look only to the statutory definitions'—i.e. , the elements—of a defendant's prior offense[ ], and not 'to the particular facts underlying th[e] conviction[ ].'" *Id.* at 2283 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

In the context of determining whether a conviction is a crime of violence, as defined by § 4B1.2(a)(1), the question asked is whether "the use or threat of physical force [against the person of another]" is an element of the offense. See *United States v. Brown*, 765 F.3d 185, 188 (3d Cir. 2014). If the statute has this element, or "defines the crime more narrowly," then the conviction can serve as a predicate offense. See *Descamps*, 133 S.Ct. at 2283. But if the "statute sweeps more broadly

14

than the [Guidelines-defined crime of violence], a conviction under [that statute] is not a career offender predicate even if the defendant actually committed the offense in a way that involved the use (or threatened use) of physical force against another." *Brown*, 765 F.3d at 189.

Because the categorical approach is concerned only with what conduct the conviction necessarily involves, the court "must presume that the conviction rested upon nothing more than the least of the acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013).

Critically, the Supreme Court's opinions in *Descamps* and *Mathis*, issued after Cook was sentenced, limited the modified categorical approach to "divisible" statutes [*Descamps*, 570 U.S. at 263-64] and defined a divisible statute as one that lists alternative offense "elements" defining distinct crimes. See *Mathis*, 136 S. Ct. at 2249. A statute that defines a single crime but "spells out various factual ways," or "means," "of committing some component of the offense" is not divisible. *Mathis*, 136 S. Ct. at 2249. The test for distinguishing between a divisible and an indivisible statute is whether the jury must agree on the particular alternative by which the defendant committed the crime. *Id.* at 2256. If so, the statute is divisible. If not—if the jury can convict even if it disagrees as to how the defendant committed the crime—then the statute is indivisible.

The Court in *Mathis* explained that elements, not means, govern the categorical and modified categorical analysis for three reasons: (1) the statute requires a prior "conviction" for a certain type of crime, not the "commission" of that offense; (2) to avoid "serious Sixth Amendment concerns," judges must be prohibited from exploring "the manner in which the defendant committed [the] offense," rather than simply "identifying the crime of conviction"; and (3) relying on facts that were not essential to the conviction is unfair to defendants who "have no incentive to contest what does

15

not matter under the law." *Id.* at 2252-53. A focus on "elements alone" ensures that the subsequent federal sentence is based on what a jury necessarily found or the defendant necessarily admitted. *Id.* at 2255. Because of the limited nature of the inquiry, if an overbroad statute is indivisible, the analysis ends, because "no conviction under that law could count as an [career offender] predicate." *Mathis*, 136 S. Ct. at 2249. The commentary to USSG § 4B1.2 expressly adopts the same categorical approach later analyzed in *Mathis*.

In this case, the District Court erred in determining that Cook was a career offender within the meaning of USSG § 4B1.1(a), which provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

Cook was over 18 years of age when he committed this offense, and it was a "controlled substance" offense within the meaning of USSG § 4B1.1(a). His sentence was therefore subject to being enhanced under the "Career Offender" Guidelines provision, § 4B1.1, if he had "at least two prior felony convictions of either a controlled substance offense or a crime of violence." The PSR construed USSG § 4B1.2, which defines a "controlled substance offense" and a "crime of violence."

In this case, Cook was classified as a career offender because before he was convicted in federal court of the present offense, Cook allegedly had at least two prior felony convictions of a "crime of violence," enumerated as follows:

(1)     June 21, 1994: Robbery No Gun/Deadly Weapon, Camdon Police Department, Camdom, ND, Docket No. 94CF4876. Cook was sentenced to 15 years imprisonment; and

(2)     March 14, 2007: Robbery by Sudden Snatch, No Weapon, Duval County Sheriff's Office, Jacksonville, FL, Docket No. 07CF4987. Cook was sentenced to 5 years, 1 day custody.

### *Crime of Violence*

The Definitions of Terms Used in Section 4B1.1. The term "crime of violence" means any

offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1)     has as an element the use, attempted use, or threatened use of physical force
against the person of another, or

(2)     is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible
sex offense, robbery, arson, extortion, or the use or unlawful possession of a
firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in
18 U.S.C. § 841(c).

USSG § 4B1.2.

In this case, Cook contends that his prior Robbery convictions do not qualify as predicate

offenses under the career offender guideline for the following reasons:

### ***North Carolina Robbery***

In *United States v. Gardner*, 823 F.3d 793, 804 (4th Cir. 2016), the Fourth Circuit held that

North Carolina common-law robbery is not a violent felony under the force clause of the ACCA.

North Carolina common law robbery does not categorically match the crime of extortion listed in

the enumerated language of 18 U.S.C. § 924(e)(2)(B)(ii). Because the Fourth Circuit concludes that

North Carolina common law robbery committed by means of "violence" does not require the use,

attempted use, or threatened use of "physical force," within the meaning of the ACCA, the Court

need not consider whether robbery committed by means of "fear" otherwise would require the use,

attempted use, or threatened use of "physical force." Therefore, Gardner's sentence was vacated and

remanded for resentencing.

To determine if a prior conviction constitutes a crime of violence, courts use a "categorical

approach, looking only to the statutory definitions of the prior offenses, and not to the particular facts

17

underlying those convictions." *United States v. Brandon*, 247 F.3d 186, 188 (4th Cir. 2001) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). In a "narrow range of cases," however, a "state statute can be violated in several ways," some of which would fall within the definition of a "crime of violence," and some of which would not. *Id.* When a prior conviction is for violating such a "divisible statute"—one that sets out one or more of the elements in the alternative—courts use a "modified categorical approach." *Descamps v. United States*, 133 S. Ct. 2276, 2279 (2013); *United States v. Alston*, 611 F.3d 219, 224 (4th Cir. 2010). In using this approach, courts may only rely on documents with "the conclusive significance of a prior judicial record," such as charging papers, written plea agreements, and jury instructions. See *Shepard v. United States*, 544 U.S. 13, 20 (2005).

North Carolina General Statutes Section 14-87 provides that:

Any person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another or from any place of business, residence or banking institution or any other place where there is a person or persons in attendance, at any time, either day or night, or who aids or abets any such person or persons in the commission of such crime, shall be guilty of a Class D felony.

N.C. Gen. Stat. § 14-87(a).

North Carolina courts have interpreted § 14-87 as encompassing four elements: "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened" and (4) "the defendant had the intent to deprive the owner of his property at the time of taking." *State v. Kemmerlin*, 356 N.C. 446, 573 S.E.2d 870, 889 (2002) (citations omitted).

18

Here, Cook argues that his prior common law robbery in North Carolina conviction does not qualify as a "crime of violence" because the crime did not require the use of violent physical force "capable of causing physical pain and injury to another person," e.g. administering poison.

Fourth Circuit recognized that only minimal force is required to commit robbery against a victim's resistance under a similarly-construed North Carolina statute. Because North Carolina courts had upheld convictions for robbery by force where the defendant simply pushed the victim's hand off a carton of cigarettes before stealing it, or where the defendant pushed the shoulder of a store clerk, causing her to fall while he took possession of an item in the store, the minimum conduct necessary "does not necessarily include the use, attempted use, or threatened use of" violent force required by the ACCA elements clause. See *Gardner* at 803-804.

A conviction might be a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another," see *id.* at § 4B1.2(a)(1) (the "force clause" or "elements clause").

The Guidelines commentary defines some of the enumerated offenses, but not all. "Robbery," for instance, is undefined.

After *Johnson* was decided, the robberies had to fall under the "force clause" in order to count as violent felonies. The Fourth Circuit said "to qualify as a categorical match with the force clause, North Carolina common law robbery necessarily must have as an element the "use, attempted use, or threatened use of physical force against the person of another." Instead, "physical force" within the context of the ACCA means "violent force — that is, force capable of causing physical pain or injury to another person." The Court focuses on "the minimum conduct necessary for a violation" under state law, which is conduct to which there is a "realistic probability, not a theoretical

19

possibility," that a state would apply the law.

For common law robbery, North Carolina courts have said that "although actual force implies personal violence, the degree of force used is immaterial, so long as it is sufficient to compel the victim to part with his property." Therefore, even the slightest contact can constitute the "violence" necessary for a common law robbery conviction under North Carolina law.

Because North Carolina "force" does not necessarily include the use, attempted use, or threatened use of "force capable of causing physical pain or injury to another person," as required by the force clause of the ACCA, the Fourth Circuit held that North Carolina common law robbery is not a "violent felony" under the ACCA.

### *Florida Robbery*

In *United States v. Geozos*, __F.3d__, 2017 WL 3712155 (9th Cir. 2017), the Ninth Circuit hold that neither robbery, armed robbery, nor use of a firearm in the commission of a felony under Florida law is categorically a "violent felony." We recognize that this holding puts us at odds with the Eleventh Circuit, which has held, post-*Johnson I*, that both Florida robbery and (necessarily) armed robbery are "violent felonies" under the force clause. See *United States v. Lockley*, 632 F.3d 1238, 1245 (11th Cir. 2011) (robbery); see also *United States v. Fritts*, 841 F.3d 937, 942 (11th Cir. 2016) ("[W]e hold here that under *Lockley* . . . a Florida armed robbery conviction under § 812.13(a) [sic] categorically qualifies as a violent felony under the ACCA's elements clause."), cert. denied, 137 S. Ct. 2264 (2017). But we are bound by our own precedent—including *Parnell* and *Strickland*—which may differ from the Eleventh Circuit's interpretation. Moreover, we think that the Eleventh Circuit, in focusing on the fact that Florida robbery requires a use of force sufficient to overcome the resistance of the victim, has overlooked the fact that, if the resistance itself is

20

minimal, then the force used to overcome that resistance is not necessarily violent force. See *Montsdoca v. State*, 93 So. 157, 159 (Fla. 1922) ("The degree of force used is immaterial. All the force that is required to make the offense a robbery is such force as is actually sufficient to overcome the victim's resistance."). The Ninth Circuit reversed the district court's order denying Defendant's § 2255 motion and remand with instructions to vacate Defendant's sentence. Because Defendant has already been in prison longer than the statutory maximum sentence for a non-ACCA-enhanced conviction under 18 U.S.C. § 922(g)(1), see id. § 924(a)(2), the district court shall direct that Defendant be released from custody immediately. The mandate shall issue forthwith.

In summary, "force" (even when victim resists) under Florida statute can be committed by minimal force, for example, by tug-of-war with victim over purse. Also, Florida armed robbery not violent felony because weapon can be concealed during robbery. Therefore, none of the Florida robbery convictions qualifies as a "violent felony" under the force clause, so the *Johnson II* error at Diaz's sentencing was not harmless. Accordingly, Defendant is entitled to relief.

A Robbery under North Carolina and Florida statutes can be a crime of violence only if "'the least of th[e] acts' criminalized" is sufficient to meet the guidelines' definition of a crime of violence. See *Moncrieffe v. Holder*, 569 U.S. 184, 191(2013)(quoting *Johnson v. United States*, 559 U.S. 133, 137(2010)); see also, *United States v. Dahl*, 833 F.3d 345, 350 (3d Cir. 2016) (determining 'the least culpable conduct hypothetically necessary to sustain a conviction under the statute". *United States v. Wilson*, 880 F.3d 80 (3rd Cir. 2018).

The Court also considered the government's alternative argument that attempted second degree robbery was a "crime of violence" covered by Career Offender's residual clause, USSG § 4b1.2(a)(2). Because the government had conceded that the residual clause was vague under

21

*Johnson I* in the district court pre *Beckles v. United States*, 137 S. Ct. 886 (2017), the Court applied the plain error standard of review to the government's argument. Under the plain error rule, the Court held the government had not shown, or even argued, how a decision to let the defendant's non-career offender enhanced sentenced stand "would impair the 'fairness, integrity, or public reputation of judicial proceedings."

Accordingly, Cook's prior conviction is indivisible and does not qualify as a career offender predicate offense.

See *United States v. O'Connor,* 874 F.3d 1147 (10th Cir. 2017)– The Court held that O'Connor's prior conviction for Hobbs Act robbery was not a "crime of violence" under the Guidelines and vacated his sentence and remanded for resentencing.

See also, *United States v. Eason*, et. al., (No. 16-15413) (11th Cir. March 24, 2020)– These consolidated direct criminal appeals each present the same issue: whether a conviction for Hobbs Act robbery qualifies as a "crime of violence" under the Sentencing Guidelines, U.S.S.G. § 4B1.2(a). After careful review, and with the benefit of oral argument, the Court concluded that the answer is no. The Court vacated each defendant's sentence and remanded for further proceedings consistent with this opinion.

In this case, Cook asserts factual innocence of his sentence enhancement due to a change of law. As such, Section 2255 is inadequate or ineffective because of: (1) the existence of new interpretation of statutory law in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1223 (2018) and *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), (2) which was issued after Cook had a meaningful time to incorporate the new interpretation into his direct appeals or subsequent motions, (3) that is retroactive, and (4) applies to the petition's merits such that it is more likely than not that no reasonable trier of fact would have enhanced his sentence. See *Wooten,* 677 F. 3d at 307–08.

22

Cook's sentence was driven by his sentencing enhancement under USSG § 4B1.1. This enhancements virtually increased his sentence. As such, because he is actually innocent of said enhancements, he should be resentenced to a significantly less harsh sentence.

*Dimaya* and *Davis* are both new interpretations of statutory law. Courts have disagreed on whether the unconstitutionality of § 924(c)(3)(B) is a right "newly recognized by the Supreme Court," as well as whether that right has been made retroactively applicable. Under *Johnson v. United States*, 135 S. Ct. 2551 (2015), several courts, including the Fourth, Sixth and Tenth Circuits, ruled that the Supreme Court had not created a new right on which the movants appealing convictions unrelated to the ACCA could rely.

Here, Cook's robbery convictions are not "violent felonies." See *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019), holding that § 924(c)(3)(B) is unconstitutionally vague. The Court refers to this clause as the "risk-of-force clause."

According to *Johnson*, "[t]wo features of the residual clause conspire to make it unconstitutionally vague."

The first feature is what is called the "ordinary case" analysis required under ACCA: in order to determine whether a given crime is a "violent felony," a court has to disregard the facts of the specific case before it, and consider only the "ordinary," or typical, case of the crime that the defendant was convicted of. For example, if a defendant was convicted of obstruction of justice, and his actual conduct involved stabbing a witness to death, the court cannot rule that the defendant committed a "violent felony" merely because this particular case involved a stabbing. Instead, the court is required to decide whether a "typical" obstruction of justice crime involves stabbing, or some other conduct with a "serious potential risk of physical injury." The reverse is also true: just because a defendant happened to commit a crime in a peaceful and non-violent manner in a case

23

does not affect the court's decision on whether the crime is a "violent felony." In all cases, the court can only consider whether the "typical" or "ordinary" case of the crime meets the "serious potential risk of physical injury" standard.

ACCA's second problematic feature is the uncertainty about how much risk is enough for a crime to count as a "serious potential risk." Even if data about an "ordinary case" is available, it is not at all clear if a crime that has, say, a 10% chance of causing permanent disfigurement in a victim is a "serious potential risk for physical injury." What about a crime with a 1% chance for death? And would this crime have a greater or lesser potential risk for physical injury than the crime with the 10% chance of permanent disfigurement? Although it is not uncommon for the law to sometimes rely on imprecise standards to judge real-world facts (consider, for example, imprecise standards like "reasonable person," or "material fact"), ACCA pairs an imprecise standard with a judicially imagined "ordinary case." That pairing, according to the Supreme Court, is what renders ACCA unconstitutionally vague.

Accordingly, if conduct that would be a robbery is not a "crime of violence" under § 4B1.2(a)'s enumerated or force clauses, then robbery is not a "crime of violence" under the Guidelines. This is so even when the defendant's actual conduct leading to the underlying robbery conviction would satisfy the § 4B1.2(a) definitions. "[T]he mismatch of elements saves the defendant from an [enhanced] sentence," *Mathis v. United States*, —— U.S. ——, 136 S.Ct. 2243, 2251, 195 L.Ed.2d 604 (2016), because "[t]he key is elements, not facts," *Descamps*, 133 S.Ct. at 2283.

24

### a.    Enumerated Clause

Applying the categorical approach to the enumerated offense clause, we compare the elements of the defendant's crime of conviction—here, First Degree robbery—with the elements of any potentially applicable § 4B1.2(a)(2) enumerated offenses—here, robbery and extortion—to see if they match. See, *Mathis*, 136 S.Ct. at 2248-49; *Titties*, 852 F.3d at 1265.6 If the Guidelines do not supply a definition of the enumerated offense, as here with robbery, we must determine its generic definition by considering "a wide range of sources, including federal and state statutes, the Model Penal Code, dictionaries, and treatises." *United States v. Rivera-Oros*, 590 F.3d 1123, 1126-27 (10th Cir. 2009). If the scope of conduct covered by the elements of First Degree robbery—not the facts underlying Cook's conviction—is broader than what the enumerated offense definition would cover, the "crime of violence" sentencing enhancement is not valid under that clause. See *Titties*, 852 F.3d at 1265-66.

### b.    Force Clause

Under the force clause, we analyze whether the statute underlying the conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another." USSG § 4B1.2(a)(1) (emphasis added); see *United States V. Aparicio Soria*, No. 12-4603 (4th Cir. 2013); *United States v. Wright*, 957 F.2d 520, 521 (8th Cir. 1992). If the statute criminalizes only conduct that fits within the force clause, then a sentencing enhancement is valid. See *United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008) (applying the categorical approach to determine whether a prior conviction fit within the force clause and thus warranted a sentencing enhancement). But if the First Degree robbery statute covers conduct that falls outside the force clause—such as threatening property rather than "the person of another"—then First Degree robbery is not

25

categorically a crime of violence under that clause.

Because robbery is not categorically a crime of violence, Cook's robbery convictions do not qualify as predicate offenses under the career offender guideline.

In 2005, the Supreme Court decided that "If the criminal statute is overbroad and prohibits both qualifying and non-qualifying conduct, the court must evaluate the character of the prior offense to determine whether it supports the enhancement." *Id.* When considering the character of the prior offense, the court's inquiry is "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of information." See *Shepard v. United States*, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L. Ed. 2d 205 (2005). Since the government's failure to develop the underlying record as to the factual basis upon which the conviction rests, it is now prohibited by the Court's "second bite at the apple" dicta, to now present what is commonly known as "*Shepard*" approved documents, and, therefore this Court is left with no other option but to conclude; that is, for the purpose of this proceeding, that the prior felony conviction for First Degree robbery does not qualify as a crime of violence.

Thus, statutes that criminalize conduct falling short of *Johnson*'s "violent force" do not qualify as crimes of violence under USSG § 2K2.1(a)(4)(A). Cook's North Carolina and Florida robbery statutes are indivisible and does not necessarily require the use of violent force as one of its elements.

Absent the career offender enhancement, Cook's Total Offense Level would be 19 and his Criminal History Category would be IV, which establishes a guideline range of 46 to 57 months' imprisonment. Finally, Cook asserts that the increase in the calculation of his sentencing range based

on the career offender enhancement, resulted in a longer sentence. If so, this could be deemed a miscarriage of justice.

## VI. CONCLUSION

For the above and foregoing reasons, it is equitable that Cook be resentenced without the career offender enhancement, in view of the fact that his robbery convictions does not qualify as predicate offense under the career offender guideline. In the alternative, an evidentiary hearing should be held so that Cook may further prove his meritorious ground for relief, resolve any disputed facts, and expand an incomplete record.

Respectfully submitted,

Dated: April 2ND, 2020.

HORACE COOK
REG. NO. 01046-104
USP LEAVENWORTH
U.S. PENITENTIARY
P.O. BOX 1000
LEAVENWORTH, KS  66048
Appearing *Pro Se*